FILED

2021 Mar-31  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| HOLLI WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-01669-SGC |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Holli Wright, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB"). Wright timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review. For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I.      FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

On January 11, 2017, Wright applied for a period of disability and disability insurance benefits under Title XVI of the Social Security Act. (R. 11). In her application, Wright alleged disability beginning on December 11, 2016, due to

---

[1] The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10).

chronic pain, lupus, morbid obesity, anxiety/obsessive and depressive/bipolar disorders, and seizure disorder. (R. 11, 13). Wright was forty years old at her alleged onset date and forty-two at the time of the decision by the Administrative Law Judge ("ALJ"). (R. 11). She has a twelfth-grade education and past work experience as a sales clerk, retail store manager, credit clerk, and kitchen supervisor. (R. 23). Wright alleges she is unable to work "primarily due to chronic moderately severe pain and swelling in her legs from lupus." (Doc. 16 at 5). Wright testified she cannot stand without it causing swelling and fluid retention in her legs, knees, and feet and that traveling and sitting where her "legs dangle at all" causes swelling in her legs. (R. 120-21). Wright stated severe swelling occurred two or three times a month and lasted three to four days. (R. 121).

On April 4, 2017, the Social Security Administration ("SSA") initially denied Wright's claim, after which she requested a hearing before an ALJ. (R. 11). On January 22, 2019, the ALJ held a video hearing at which Diana L. Kizer, an impartial vocational expert, also appeared and testified. (R. 11). Following the hearing, the ALJ denied Wright's claim. (R. 8). After exhausting her administrative remedies, Wright timely filed the instant appeal.

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The SSA employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 416.920(b).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012). If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. At the first step, the ALJ determined Wright met the insured status requirement of the Social Security Act through December 31, 2021, and had not engaged in substantial gainful activity since December 11, 2016—her alleged onset date. (R. 13).

If a claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment, or combination of impairments, which has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 416.920 (a)(4)(ii), (c). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. Furthermore, it "must be established

by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see* 42 U.S.C. § 423(d)(3).

An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 416.922(c). "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of her individual impairments alone is disabling. 20 C.F.R. § 416.920. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. 20 C.F.R. § 416.912(a). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), (c). At the second step, the ALJ determined Wright has the following severe impairments: "chronic pain; lupus; morbid obesity; anxiety/obsessive and depressive/ bipolar disorders; and seizures." (R. 13).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§

4

416.920(a)(4)(iii), (d).  If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled.  *Id*.  The claimant bears the burden of proving her impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 F. App'x at 863. At the third step, the ALJ determined Wright did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (R. 14).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R. § 416.920(e).  A claimant's RFC is the most she can do despite her impairment.  20 C.F.R. § 416.945(a).  At the fourth step, the Commissioner compares the assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id*.  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 416.960(b)(1).  The claimant bears the burden of proving her impairment prevents her from performing her past relevant work.  *Reynolds-Buckley*, 457 F. App'x at 863.  If the claimant is capable of performing past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), (f).

Before proceeding to the fourth step, the ALJ determined Wright had the RFC

5

to perform a limited range of medium work.  (R. 16).  Specifically, the ALJ found

Wright could perform medium work, as defined in 20 C.F.R. § 404.1567(c), with

the following limitations:

> [S]he is capable of frequent climbing of ramps and stairs.  She is unable
> to climb ladders, ropes, and scaffolds.  She is capable of frequently
> balancing, stooping, kneeling, crouching and crawling.  She must avoid
> all exposure to hazards such as open flames, unprotected heights, and
> dangerous moving machinery.  She is also limited to unskilled work,
> which is simple, repetitive, and routine.  Her supervision must be
> simple, direct, concrete, constructive, and supportive.  Interpersonal
> contact with supervisors and coworkers must be incidental to the work
> performed.  She must not be required to work at fast-past production
> line speeds.  She should have only occasional, gradually-introduced
> workplace changes.  She must have normal, regular work breaks at least
> every two hours.  She should have only occasional, casual contact with
> the general public.

(R. 16).  At the fourth step, the ALJ determined Wright was unable to perform her

past relevant work.  (R. 23).  However, with the aid of testimony from the vocational

expert ("VE"), the ALJ found Wright could perform the duties of a marker and mail

clerk.  (R. 24).  Therefore, the ALJ concluded Wright had not been under a disability

from December 11, 2016, through the date of the decision.  (R. 24).

## II.    STANDARD OF REVIEW

Review of the Commissioner's decision is limited to determining whether: (1)

it is supported by substantial evidence; and (2) the Commissioner applied correct

legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

2004).  A district court reviews the Commissioner's findings of fact with deference

and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. DISCUSSION

Wright presents two arguments on appeal: (1) the ALJ improperly applied the Eleventh Circuit's pain standard; and (2) the ALJ failed to properly articulate good

cause for according less weight to the opinions of her treating physicians. (Doc. 16 at 4, 10).  The arguments are addressed in turn.

### A.  <u>Application of the Pain Standard</u>

Wright asserts the ALJ failed to properly evaluate her allegations of pain under the Eleventh Circuit's pain standard.  (*Id.* at 4).  Under the pain standard:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see* 20 C.F.R. § 404.1529.

If a claimant satisfies the first part of the test, the ALJ must evaluate the intensity, persistence, and effect of the claimant's symptoms on her ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c)-(d), 416.929(c)-(d).  While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including her history, medical signs, laboratory findings, and statements by medical sources or other sources about her symptoms' impacts.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have

reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required to conduct a symptom analysis, but the reasons for the findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted). Under the relevant Social Security Ruling:

> In evaluating an individual's symptoms, it is not sufficient for [the ALJ] to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for [the ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated.

SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304 at *10.

Wright claims she experiences "chronic moderately severe pain and swelling in her legs from lupus" and the resulting pain and discomfort make her unable to work. (Doc. 16 at 5). At the hearing, Wright testified she was unable to work primarily due to swelling and fluid retention in her knees, ankles, and legs; she noted these symptoms had increased in frequency and severity over the previous five years. (R. 121). Wright also explained the side-effects from her medications caused her to

fall asleep while attempting to work.  (R. 127).  She cited a specific instance during her previous employment when she started falling asleep while standing and performing a transaction at a cash register.  (*Id.*).  Wright further testified she had to change positions frequently throughout the day to prevent pain and swelling in her lower limbs.  (R. 122).  She alleged she could only sit or stand for fifteen to twenty minutes before needing to change positions.  (R. 123).  Wright testified she needed to spend approximately half of each day lying down and that she was unable to get out of bed on "some days."  (R. 124).

The ALJ found Wright's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms but her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 17).  Specifically, the ALJ relied on: (1) the lack of evidence of these symptoms in Wrights' doctors' treatment notes; (2) Wright's activities of daily living; and (3) medical opinion evidence.

First, the ALJ accurately discussed examination notes generated by Wright's treating physicians from 2016 through 2018.  (R. 17-22).  While these records often reflect edema in Wright's legs and generalized muscle tenderness, they also consistently show normal motor strength, range of motion, gait, and sensation in her legs.  (R. 17-22; *see, e.g.*, R. 343, 355, 498-99, 611, 669, 677, 681, 693, 701, 845,

1017, 1076).  Treatment for edema included counselling on diet and exercise.  (*E.g.* R. 345, 353, 360).  These consistent, benign physical findings provide substantial evidence to support the ALJ's conclusion that Wright's pain was not as severe as she alleged.  Wright points to other treatment notes showing her reports of symptoms including pain, myalgia, fatigue, vision changes, nausea, vomiting, joint pain, muscle pain, muscle cramps, and muscle weakness, as well as pain and swelling in her hips, knees, ankles, and legs.  (Doc. 16 at 7-1; *see* R. 309, 311, 314, 316, 335). However, this argument runs contrary to the applicable standard of review under which the court is not permitted to substitute its own judgment for the ALJ's, so long as substantial evidence supports the ALJ's decision.

The ALJ also relied on Wright's self-reported activities of daily living, which included the ability to: (1) prepare her own meals daily; (2) clean the bathroom; (3) load the dishwasher; (4) do laundry; (5) shop for groceries twice a week; (6) drive; and (7) handle household finances  (R. 21; *see* R. 259-60).  Additionally, the ALJ noted Wright reported her activities of daily living improved with medication.  (R. 21; *see* R. 1010-1044).

As to opinion evidence, the ALJ gave great weight to Dr. Thomas McKinnon, a state agency physician who reviewed Wright's medical records and concluded she could: (1) occasionally lift fifty pounds; (2) frequently lift twenty-five pounds; (3) stand and/or walk for six hours during an eight-hour workday; and (4) sit for six

hours during an eight-hour work day.  (R. 21; *see* R. 147).  Dr. McKinnon also concluded Wright could frequently climb ramps and stairs, balance, stoop, kneel, and crawl; could never climb ladders, ropes, or scaffolds; and should avoid any exposure to hazards.  (*Id.*).[2]

The foregoing substantial evidence, which is properly considered when applying the pain standard, supports ALJ's conclusion that Wright's pain was not as debilitating as alleged.

**B.**    **Weight Given to the Opinions of Treating Physicians**

An ALJ must state with particularity the weight given to medical opinions and the reasons for doing so.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Moreover, an ALJ must give the medical opinions of treating physicians "substantial or considerable weight," absent clearly articulated good cause. *Id.* (internal quotation marks omitted).  An ALJ's failure to clearly articulate the weight assigned to a medical opinion is an error that requires reversal and remand.  *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) ("In the absence of [a clear articulation of the weight given different medical opinions], it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence[,]" and "'we will decline to affirm

---

[2] The remaining opinion evidence is discussed in the following section of this opinion.

simply because some rationale might have supported the ALJ's conclusion.'" (quoting *Winschel*, 631 F.3d at 1179)).

The ALJ is free to reject a treating physician's opinion but must "clearly articulate the reasons for giving less weight to the opinion of a treating physician, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ's reasons for discrediting a treating physician's opinion also must be supported by substantial evidence. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). An ALJ may discount a doctor's opinion, including a treating doctor's opinion, when the opinion is conclusory; the doctor fails to provide objective evidence to support his or her opinions; or the opinion is inconsistent with the record as a whole. *See id.* Additionally, opinions on some issues are not medical opinions but are instead "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d). These non-medical opinions include opinions about a claimant's status as disabled or being unable to work. *See id.*

Here, Wright contends the ALJ erred in his treatment of the opinion evidence from two of her treating physicians, Drs. Walter Chatham and Jason Ham. (Doc. 16 at 11). Each doctor's opinions are addressed in turn. The record includes three opinions from Dr. Chatham: (1) a February 20, 2017 form he completed in response

13

to a request for medical information related to Wright's food assistance program (R. 597); (2) a May 30, 3017 "To Whom It May Concern" letter (R. 661); and (3) a May 31, 2017 physical capacity form (R. 662-64). The February 20, 2017 opinion includes responses to seven questions, which Dr. Chatham completed by checking boxes or writing short answers. In the form, Dr. Chatham opined Wright was unable to work without restrictions due to lupus with optic neuritis and loss of vision in her left eye, which he believed to be permanent. (R. 597). The May 30, 2017 letter notes the same lupus diagnosis and left eye vision deficits, as well as additional symptoms of fatigue, arthritis, photosensitive skin rashes, and elevated antinuclear antibodies. (R. 661). The letter concludes with Dr. Chatham's opinion that Wright was unable to work as of February 1, 2017, and she would be unable to return to work for more than six hours a day in the foreseeable future due to her symptoms and the side-effects of her medications. (*Id.*). The May 31, 2017 physical capacity form is a familiar form in which Dr. Chatham checked boxes indicating his opinion of Wright's ability to perform certain tasks. (R. 662-64).

As an initial matter, Wright contends the ALJ erred by failing to address Dr. Chatham's February 20, 2017 letter. (Doc. 16 at 11-12). However, as the Commissioner notes, the opinions Dr. Chatham expressed in the February 20, 2017 letter are duplicative of the opinions he gave on May 30 and May 31, 2017. (*See* Doc. 17 at 11-12). The ALJ did specifically address and discuss Dr. Chatham's

treatment history with Wright, as well as the May 2017 opinions.  (R. 22-23; *see* R. 609-615, 661-664).  While the ALJ did not specifically discuss the February 20, 2017 opinion, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the district court to conclude he considered the medical condition as a whole.  *Dyer*, 395 F.3d at 1211.

The ALJ gave some weight to Dr. Chatham's opinions, concluding his findings regarding exertion and manipulation were consistent with his examination findings; however, the ALJ concluded Dr. Chatham's "overall conclusion regarding [Wright's] ability to work any job are inconsistent with those same exam findings and the other evidence in the case." (R. 22-23).  Notably, the physical capacity form itself appears to be inconsistent with the accompanying letter.  While the letter states Wright could not work for more than six hours a day, the physical capacity form indicates she could sit for four hours (up to four hours continuously), stand for two hours (up to one hour continuously), and walk for two hours (up to one hour continuously) during an eight-hour day.  (R. 661-62).[3]  Dr. Chatham also opined Wright could frequently lift up to ten pounds, occasionally lift up to one hundred pounds, and occasionally bend, squat, crawl, and reach, but could never climb.  (R.

---

[3] These limitations imposed by Dr. Chatham also undermine Wright's testimony regarding her inability to sit or stand for more than fifteen-twenty minutes at a time and her need to lie down for half of the day.  (R. 123-24).

663).  In discounting Dr. Chatham's ultimate conclusion regarding Wright's ability to work, the ALJ relied on the already-discussed examination notes (many of which were created by Dr. Chatham), routinely showing her gait, range of motion, sensation, and motor functions were normal.  (R. 22-23, 498, 609-11, 667-68, 680-81, 699-702, 843-47, 1014-18, 1074-76).    These inconsistencies with Dr. Chatham's—and other treating physicians'—treatment notes constitute substantial evidence sufficient to give less weight to his opinions.

Substantial evidence also supports the ALJ's evaluation of Dr. Ham's opinions.  (R. 22, 981).  Dr. Ham stated Wright's "primary medical condition that impacts her day to day life is Systemic Lupus Erythematosus, which causes symptoms including generalized pain with myalgia's and arthralgia's, fatigue, paresthesia and seizure activity."  (R. 981).  Dr. Ham also notes that Wright suffers from anxiety and severe chronic osteoarthritis, necessitating knee arthroplasty, and her prescribed medication would cause dizziness, sedation, and loss of concentration.  (*Id.*).  Dr. Ham concluded that Wright would be "unlikely to be able to maintain employment of any kind."  (*Id.*).

The ALJ gave Dr. Ham's opinion partial weight due to his treating relationship with Wright.  (R. 22).  However, the ALJ determined his ultimate conclusion regarding Wright's ability to work was "inconsistent with his own examination findings that were unremarkable apart from musculoskeletal

16

tenderness." (R. 22). The ALJ also noted that Dr. Ham's records through 2018 indicated Wright had no musculoskeletal swelling or deformity and that her gait, range of motion, sensation, and motor functions were normal. (*Id.*; *see* R. 1010-1044). The ALJ also considered Dr. Ham's report that Wright's daily activities improved with medication and her anxiety/depression did not interfere with her daily activities. *Id.*

## IV.   CONCLUSION

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, the court finds the ALJ's decision is due to be affirmed. A separate order will be entered.

**DONE** this 31st day of March, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE